This is Dillon Gage v. Certain Underwriters at Lloyd's, 20-10262, Mr. Levingen. Thank you, Your Honor. May it please the Court, I'm Jeff Levingen for Dillon Gage of Dallas. The Court below committed two separate errors in holding that coverage for the loss of the gold coins was barred by the Invalid Payments Exclusion Clause. First of all, it gave too broad of a definition to the causation term of the policy, that being the words, consequent upon, and it then ignored how the loss was actually caused by UPS's shipping errors, which is covered under the policy. Second and separately, it misapplied the concurrent causation doctrine, again, by ignoring how UPS's subsequent shipping errors were a separate and independent cause of the loss under Texas law. Now, importantly, either one of those errors requires reversal. This Court need not find both in order to reverse because they're based on alternative arguments. I'll start with the first error, the District Court's misinterpretation and misapplication of the causation term in the exclusion. The first question for the Court is, what level of causation is required by the phrase consequent upon handing over in the Invalid Payments Exclusion Clause? There are really three possibilities here. The first, at one extreme, is but-for causation, where, essentially, any minor event can be a cause if the loss wouldn't have occurred otherwise. That's the broadest and the easiest to establish. At the other extreme is proximate cause, which requires cause-in-fact and foreseeability. It's the hardest to prove, and we're not claiming that this particular exclusion requires showing a proximate cause. Then there's a middle ground between those two, which requires a substantial nexus or a significant causal link. The Court below shows but-for. It held that the fraudulent checks are but-for cause of the loss, but that's the wrong test because consequent upon requires a more demanding level of causation than just but-for. We know that from the case law. The case law holds that a but-for level of causation is associated with policy provisions that use words like arising from or arising out of. That's the Texas Supreme Court in Utica National. That's this court in the Red Ball case. That phrase, arising from, is indeed used in some of the exclusions in this particular policy, but it's not in the exclusion we're talking about. Our exclusion uses the words consequent upon, and that has to have a different meaning from arising from or arising out of. The underwriters, in fact, give you that definition. Page 14 of their brief, they tell you that consequent upon means the result of, and actually we agree with that. We think consequent upon does mean the result of, and this court has interpreted the result of to require a substantial nexus, a significant causal link, a substantial factor, something like that between the event and the loss. It's really the middle ground test, and it's similar to the Black's Law Dictionary definition of consequent, which is a natural result or a necessary effect. So then the next question for the court is whether the loss here was the result of handing over the property to UPS against payment by the fraudulent checks, and the answer is no, and here's why. The checks were only one of several different events that started this scheme, but it was really the UPS shipping errors and only the UPS shipping errors that resulted in the loss. When Dillingage handed over the property, it didn't hand it over to just any third party. It handed it over to its trusted shipping agent, UPS. At that point, no loss resulted, and no loss even should have resulted, and that's because Dillingage did everything by the book. It waited for the checks to clear, waited about two weeks before it even turned the packages over to UPS. Importantly, it instructed UPS to deliver the packages directly to the correct home address of the real Kenneth Bramlett, the real person, and it instructed UPS to release the packages only upon a signature and the presentation of identification. Had UPS done that, there would have been no loss. The real Kenneth Bramlett would have received the property, and he would have returned it to Dillingage. How do we know that? Because both Dr. Bramlett and his wife said the same thing. They said, if we got these packages, we would have called the police, and we would have made sure that the rightful owner got them. That's undisputed in this record at pages 614 and 680. But in fact, UPS did everything wrong. It allowed the packages to be rerouted even though it had promised Dillingage that it would disable the online function that would allow customers to reroute packages. That shouldn't have happened. Further, it didn't bother to obtain signatures for the first delivery of the packages to the UPS facility. And worse, it didn't ask for identification for any of the packages. And without these errors and omissions, the property would not have been rerouted, it would not have been retrieved from the UPS facility by this unknown person, and it would not have been stolen. In fact, it would have been delivered safely to the real Kenneth Bramlett at his residence. They accuse us of speculation. There's no speculation about that. It's absolutely true. Mr. Levenger, was the check ultimately, though, an invalid check? I'm sorry, Judge Graves, I didn't hear the first part of your question. And your honors, excuse me, I believe Mr. Kimmett has disappeared. I didn't notice that. Why don't you stop the clock? No, Mr. Levenger, my question is this. Even if we assume that the district court was incorrect in its conclusion that consequent upon implied some kind of a but-for causation test, whatever the correct test is based upon this consequent upon language, the exclusion provision in the policy says where it's a fact that shall prove to be false, fraudulent, or otherwise invalid or uncollectible for any reason whatsoever. Isn't that exactly what we have here? Yes, we have a forged check. But I think the important language in the exclusion precedes that. It talks about consequent upon handing over the property to any third party after receiving the check. Isn't that what happened here? Yes, except then the question is what does consequent mean? It means the result of and was the loss the result of handing over the property to UPS. The answer is no, because at the moment that Dillingage handed over the property to UPS upon allowing the fraudulent checks to clear the bank and so forth, there was no loss. In fact, no loss even should have happened because UPS had specific shipping instructions to ship the property directly to the correct home address of the real Kenneth Bramlett and release the packages only upon a signature and identification. If all that had happened like it was supposed to have, like Dillingage had instructed UPS to do, there would have been no loss. And remember the exclusion begins with the word loss. The loss is consequent upon the handing over the property to the third party. The loss would not have resulted if UPS had simply done its job. The loss resulted only because UPS failed in three respects. It allowed the packages to be rerouted, it didn't require any sort of signature, and it didn't require any sort of identification. So, that might have been the case. Mr. Kimmett in his briefing cites the Burlington case out of Texas, been an intermediate court, talking about concurrent causes. Obviously, you don't think that that case gets either, but it does seem to me it's following up on what Judge James, Judge Graves was asking. As you really do need both of these events, you need the delivery, the handing over, the whatever to UPS, and then you need these other malfactors events later. Isn't that a pretty good case for this, Burlington? Tell me why it's not. Yes, Your Honor. No, Burlington is distinguishable for this reason. It represents the- Burlington is a- You mean that there's not contrary authority and that we can accept Burlington as a legitimate statement of Texas law? Well, it is, except factually it's distinguishable. I think the better case for the court to look to is this court's case in Wilbrow's, which is another concurrent causation case, but it found that the covered event was a separate and independent cause. What makes Burlington distinguishable is that it falls within these category of the covered event happens first, and it's not independently actionable at all without the excluded event happening. So in that case, that case involved a failure to supervise a kid in a youth home. That in and of itself was not actionable. It wouldn't give rise to liability or damages. It required the excluded event, the assault and battery, to happen. And those things were combined. In other cases they cite, you have a situation where the covered event was derivative of or is actually the same as the excluded event. That's not our case at all. And again, I would tell the court you don't even need to get to the concurrent causation doctrine because I don't believe they've met their burden of proving that the loss was the result of the fraudulent checks, as distinct from the loss being the result of UPS's shipping errors. It was UPS's shipping errors that caused this loss. But for that. That was my question for you, Mr. Levenger. Between your two points by which you would have the summary judgment reversed or vacated, which do you think is your stronger point, the exclusion clause or the fact of the Texas rule about another basis for not holding your client liable under the Texas law about, in tort law, we used to call it superseding intervening cause, but whatever the derivation of that is. Judge Barksdale, I feel strongly about both of them, but I let off with each. I know you've got to say that, but what's Shaw's clear cut? I think, frankly, the correct definition of consequent upon, meaning the result of and the application of that to the facts of this case, that the loss was not the result of the fraudulent check, but it was the result of handing it over to UPS, who then messed up with its multiple shipping errors. So it was the shipping errors, which, of course, are covered events. That's what the policy was designed to cover. That was actually what resulted in this loss. I do like the concurrent causation doctrine, though, alternatively, because even if you were to assume that but-for causation were enough to satisfy the consequent upon requirement, the loss would still be covered under a correct application of the concurrent causation doctrine, because what we have are two separate and independent but-for causes, exactly like what you had in the Wilbrose case, two separate and independent but-for causes. In that case, the court said even if the excluded event didn't happen at all, the excluded event there being a professional malpractice, basically, in the design of some plans, you still have a separate and independent covered event in the form of a drilling error that was capable of causing the loss. I think the question that you really need to ask in the concurrent causation doctrine is whether the covered cause is of the type that could independently cause the loss without the excluded cause. That's really the test, and those facts did not exist in the Burlington case, because the covered event meant nothing until you had the excluded event. But our case is like Wilbrose, because UPS's shipping errors were independently capable of causing a loss of our property without any kind of fraudulent payment. In fact, that same thing had happened before, losses from UPS shipping errors without any kind of invalid payment at all. These losses had happened with perfectly valid payments, and that's exactly why delegations had insisted upon these security measures, the no rerouting, the signatures, and the ID. And then if you think about it, the shipping errors and the fraudulent checks involved totally separate actors, involved totally separate acts, totally separate locations, totally separate timeframes. There's just no internal evidence. Your time is about up, and I just want to get this quick answer from you. Sure. Is there anything in the record about an action by Dillon Gage against UPS? You know, another idea would be, well, why doesn't Dillon Gage just recover from UPS? But is there anything in the record about that? I may be conflating what I know versus what's in the record, but I believe the answer to the question is I think UPS had a very strict limit upon its liability and its tariff. I think there was also some thought of it going against the bank for dishonoring the check, but again, there are limitations on that. So I think the record shows that the coverage of this particular loss as a result of the UPS shipping error is really what was really Dillon Gage's avenue for relief here. One final comment, the court made this conclusion that the checks established the ability of the criminal to steal the coins. That's not true at all. It was the UPS shipping errors that established the ability of the criminal to steal the coins. The criminal, even with the fraudulent checks, even with the tracking numbers, he couldn't do a thing with it without the UPS shipping errors. So that's why I assert that there's coverage. Let's go to the questions. You'll have time to fill us in on your disagreements with Mr. Kimmett, who will have go now. Thank you, Your Honor. May it please the court, counsel. Dillon Gage is attempting to take what is a fairly simple application of Texas insurance law and complicate it beyond all recognition. In short, there are two issues in dispute here. And first is what does the plain language of the exclusion mean? And secondarily, does the concurrent causation doctrine apply in this case? Before we get to that, I'd like to do address two of the things with respect to Judge Sparkdale's recent question. In fact, UPS was a party to the underlying litigation at one point in time. The original suit filed was against both my clients and UPS. UPS was dismissed by the by Dillon Gage at some point during the underlying litigation. Secondarily, very important point that we have to address is Dillon Gage is now for the first time on appeal, arguing that a middle. Causation standard, a substantial factor test should be applied in this case. That argument was never made at the district court below. In fact, when you look at Judge Star's opinion, Judge Star specifically addresses proximate cause because that was the only causation argument made by Dillon Gage at the district court below. In our opinion, therefore, this current argument is made for the first time on appeal and is therefore weighed as a matter of law. Even, however, an argument of arguing alternatively, if the argument is to be assumed, the facts do not change, the result does not change, the exclusion provides, or excuse me, the exclusion precludes coverage for this claim. Getting to our first point, what does the exclusion mean? We all know what the Texas standard is. The Texas standard is clear that we must apply the plain language of the clause. We must apply the plain language of the clause and the plain meaning of the words unless the words have a technical term or the words are ambiguous. Here, the party stipulated to the fact that there is no ambiguity in this exclusionary clause. Furthermore, the party stipulated to the fact that these are not technical terms. Therefore, what we have to do again is just apply the plain meaning. Additionally, there is no Texas president addressing this clause or the words consequent upon. Judge Starr, therefore, did exactly what the law requires of him. He looked at the plain meaning of the words. How do we do that? Well, we look at a dictionary. He looked at the Black's Law Dictionary, which we've all been using forever, and he looked at the words and determined that the phrase consequent upon means but for. He said consequent upon, according to Black's Law Dictionary, and by the way, a definition that Dillon Gage accepted and used itself at the trial court meant occurring as the natural result of necessary effect of a particular action situation following as a natural result. I'm sorry, Judge. Oh, I thought there was a question. I think there's a cough. You can proceed. Okay, sorry. So again, what Judge Starr did is exactly what he's supposed to do. He looked at the dictionary. He applied the dictionary definition of these key words consequent upon to the undisputed facts of the case. And what he found, which is absolutely correct, is that the parties intended a but-for causation standard to be applied to this exclusionary clause. If we review the wording, and this kind of goes back to Judge Gray's question earlier, and I hope that you have the two exhibits that we provided a few days ago, but the clause itself is not very long. It says, this contract excludes any claim in respect of the property insured hereunder where the loss has been sustained by the insured consequent upon handing over such insured property to any third party. At one point, Dillon Gage was arguing that the only way that this clause applies is if the insured property is handed over to the criminal, the person who provides Dillon Gage with the fraudulent check. But again, that would be inapplicable and incorrect under Texas law. You cannot add words to the clause and say that any third party refers solely to the criminals. Any third party obviously includes UPS in this context. So if we review the wording and we look at it, the undisputed facts clearly show that exactly what is contemplated by the clause is exactly what happened here. Dillon Gage handed over the coins to a third party, UPS, consequent upon, or only after the fraudulent checks cleared the bank. As Judge Starr correctly pointed out, Dillon Gage would never have even accepted the application from the criminals. They would never put the coins in a box. They would never have issued an invoice. They would never have issued the tracking number, which is extremely important, because that's what the criminals use to change the location. The criminals would never have had the tracking number without the checks clearing the bank. Additionally, UPS would never have had the coins in the first place without the checks clearing the bank. UPS would never have had possession of the coins in the first place. The coins would never have left Dallas on their way to Alabama. Did Dillon Gage hand over the coins to a third party? Undisputedly, yes. Did Dillon Gage do this consequent upon after the checks cleared the bank? Again, undisputedly, yes. It is our opinion there is nothing further that this panel must do, because the exclusion clearly applies to the undisputed fact. Dillon Gage has attempted all along to complicate this matter unnecessarily and avoid the application of the plain meaning test. They continue to urge this court to accept a torch standard instead of the applicable and appropriate contract standard. Dillon Gage has not offered one single case in which this language has been involved or which they are using the plain meaning test. This court should reject the substantial factor test, assuming it has not been waived, and agree and affirm the but-for causation test, which was found by Judge Starr correctly. While we do not believe it is necessary, I'm moving on to point two. While we do not believe it is necessary to address the concurrent causation argument, we are going to do so anyway. We believe this court could affirm solely on the basis of the correct interpretation of the exclusionary clause. We have to note that, first off, both Dillon Gage and underwriters agree that all of this is a scheme. Everything that happened starting in late 2017 to the actual possession of the coins was a complicated scheme by some very astute criminals, and we're going to go through that in a second. But both of us agree that it's a scheme. Where we disagree entirely is that you can break the chain of causation at any one event. None of these events could have stood independent of the other. That is an undisputed fact. Initially, if the court accepts what Dillon Gage is now offering as a middle factor or substantial, excuse me, middle ground or substantial factor test, the first thing that has to be noted is there can be more than one substantial factor. Here, Dillon Gage has admitted that the fraudulent checks were a but-for cause of the loss. There is no doubt that, additionally, the fraudulent checks have to be a substantial factor in the causation analysis. I don't think anyone can plausibly argue otherwise. We agree with Dillon Gage that the fraudulent checks were an integral part of the scheme. If we could, we prepared a chronology for the panel, which we entitled Timeline of Events. And this goes directly to the entire causation argument. The interesting thing about this is all of these facts that we have on this timeline are undisputed. None of this is taken out of context in any way. They're all undisputed. They're all either agreed to by Dillon Gage in their briefing or stipulated facts in the record. If we start at late 2017, the first thing that happens is the criminals stop the mail of the Bramlets. So they do have to do that. The next thing that happens is the criminals go and pick up the stolen checks. They actually have to go get them from the bank. They then have to get into the Bramlets' multiple online accounts. They have to have the passwords and the account numbers to do that. They then are able, on multiple occasions, to transfer the money from all of these multiple accounts. They also had to know that the Bramlets had sold the house and had over $575,000 in cash in one of these accounts, which they then transferred to another account. And this is all related to the first loss. But the exact same thing happened with the second loss, but they used different accounts. Then they were able to transfer large sums of money, all while the Bramlets didn't know, from one account, I mean from multiple accounts, into one account. Then on January 28th of 2018, they submit an application. It's a fraudulent application with a fraudulent ID, driver's license, and a fraudulent signature. Again, this was done at the very beginning. The assumption that this would not have been done later on in the process, again, is without merit. January 29th, the first fraudulent check is sent to Dillon Gage. The next day, Dillon Gage deposits the check. February 12th, and this is the key, February 12th, Dillon Gage gets notice from the bank that the check clears. As we note in this timeline, at that point, Dillon Gage created the invoice, packaged the coins, assigned each package a tracking number, released the packages to UPS, and provided the tracking numbers to the criminals. UPS scanned the packages, 10 minutes later, because they had the tracking numbers, the criminals changed the location. The criminals would never have had the tracking number without the checks clearing the bank. So we go to the very next day, at 8.25 a.m., the packages are delivered to UPS. At 8.28, three minutes later, the criminals physically pick up the packages. So what we have here, when Mr. Levenger talks about a total separate time, from the moment the checks cleared the banks and Dillon Gage started this whole process, it's less than 24 hours from when the criminals picked up the coins. And again, both parties have gone through great lengths to agree that this is a criminal scheme. The entire point of the criminal scheme was to take possession of the gold, was to steal the gold. You cannot separate the scheme and say, well, at some point, the goal of the scheme was always the same. You cannot separate the scheme and the chain of causation on 7.30 or 7.40 p.m. on February 12th and say, okay, at that point, it's a totally separate and independent act. We argue in our briefing, and we argue at the trial court below, that the arguments of Dillon Gage are speculative. And this is why. They are relying on what might have happened, what could have happened, but what did not actually happen. They are also ignoring the crucial fact that there are other possible outcomes. Under their current analysis, they're saying the only possible thing that could have happened was that if UPS had done exactly what they were supposed to do, the coins would have gone to the Bramlets, and the Bramlets would have sent them back, and there wouldn't have been a loss. That goes against common sense, and it goes against logic. And the reason for that is we've just gone through all of the machinations that these criminals did. We have to assume that they were pretty smart, that they knew what was going on with UPS, they knew what was going on with Dillon Gage, they knew what was going on with the Bramlets. They were able to do all of these actions, and yet, if, hypothetically speaking, UPS did not agree to a change in location, the entire crux of the argument is the loss wouldn't have happened. But the reality is that's speculation, because that's assuming the criminals didn't have a plan B. That's assuming the criminals didn't have any other way to gain possession of the gold coins. Again, if we play this off, hypothetically speaking, UPS does not change the location of delivery. It goes to the Bramlets' house. There is nothing to say, there is absolutely no proof that the criminals could not have gained possession of the gold at the Bramlets' house in their front yard. They couldn't have held up the truck. They knew exactly what was going on because they had the tracking numbers and they knew the policies. Look at the actual facts. The criminal picked up the gold coins three minutes, three minutes after it arrived at the UPS location. To say that they would not have been able to pick it up if UPS had done exactly what they were supposed to do, I'm sorry. It just goes against all logic and is pure speculation, and none of us can rely on that when looking at the concurrent causation doctrine. They are not separate and independent acts. Judge Starr correctly found that the concurrent causation doctrine applies to exclude coverage for these stolen coins. He specifically found on numerous occasions in his opinion that the causation, the causes were the fraudulent checks and the interception of the coins, and that those causes could not be separated. That is the correct finding by Judge Starr. For these reasons, and for those set out in our brief and our SIR reply, we respectfully request that the decision of Judge Starr be affirmed and that this appeal be dismissed in its entirety. And if there's any questions, I would be more than happy to answer them. And I apologize for the, again, for the loss of power in our building and the interruption of this argument. And we're all having to adjust to the new realities. We'll see how much longer they last. Mr. Levenger, you have some time to tell us what else you think about this. Thank you, Your Honor. First of all, consequent upon cannot mean but for. Arising from means but for. If you would address his claim that you didn't raise this point in district court. We, well, we did actually, Judge Barksdale. We were debating about the definition of what consequent upon means. We argued that it means a significant cause or a substantial cause. I think we did put the label proximate cause on it. I'm content to tell you on appeal that we're not urging proximate cause, which requires a level of foreseeability. We're urging something in between a substantial factor, a significant causal link or something of that nature. And we did say that below. Now, the problem is when they talk about the policy, they talk about, well, you handed over the property to a third party. But actually, the exclusion says, did the loss result from handing the property over to a third party? We handed the property over to a trusted shipping agent, UPS. Did the loss result from that? No, it did not. No, it did not. Because when we handed the property over to UPS, we gave it specific instructions. Mr. Lavenger, if we assume that but for is incorrect and determine that there is some appropriate definition of consequent upon that falls somewhere between but for and something else on the no vote review, could we apply what we deem the correct test and make a determination about whether or not the district court should be affirmed? Well, yes, you can apply your own test. That's what this court did in the Likens case, holding that the words to result of meant proximate cause. But when you apply to the facts of this case, you cannot affirm. They have the burden of establishing conclusively and as a matter of law that the loss resulted from handing over the property to UPS. They have not come close to establishing that because the loss did not result from handing over the property to UPS. The loss resulted from UPS committing three different shipping errors. One, in allowing the perpetrator to redirect the packages to the UPS shipping facility in Alabama. That never should have happened. The instructions were to disable that function so that the property would have gone directly to the real home address of the real Kenneth Bramlett. Actually, they're the ones speculating about what would have happened thereafter. They're talking about the criminal intercepting the packages at the home. No, there's no evidence of that at all. They haven't met their summary judgment burden of that at all. The evidence is conclusive and undisputed that had the property gone to the real address of the real Kenneth Bramlett with a requirement that he sign and show ID, all of which were Dillon Gage requirements that UPS breached, only he would have gotten the packages and he testified and his wife testified without dispute that he would have turned those packages back over to Dillon Gage. There would have been no loss. Ira Fritz and his affidavit, this is in the record at page 655, testifies again without dispute that- Are there any facts to indicate when the Bramlett's discovered their checks were missing? Yes, they discovered that. I believe Mrs. Bramlett filed an affidavit of fraud, ironically, for the second check but she signed that affidavit on February 26th, which was several days after the second delivery. The second shipping delivery never should have happened because the first one should have gone directly to Dr. Bramlett who would have foiled the plot. The idea that the criminal could have carried out this scheme to the very end is unsupported by any evidence and they haven't met their summary judgment burden on that. One final point on the concurrent causation doctrine. The real question to ask is was the covered event independently capable? Could it have caused a loss independent of the excluded event? That's the articulation in the Wilbro's case. There you have two separate and independent but-for causes, both independently capable of causing a loss. That's exactly what we have here. I would encourage the court to look at the Wilbro's case. All of their cases have the timing flipped. Their cases begin with the covered event which could not have caused the loss without the excluded event. Ours actually begins with an excluded event that is overtaken by the covered event, the shipping errors by UPS. So again, the UPS errors caused the loss, period, end of story. All right, Mr. Levenger. You used up your time. Part of the problems of having Zoom video oral arguments, one of the dangers of it has manifested itself today, but it seems to have worked out. Both of you did well in staying on course. We will take this case under advisement and give you an answer as soon as we can. We are in recess.